UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20523-CR-BLOOM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

HARUN ABDUL-HAMID YENER,

     Defendant.

_____/

**MOTION TO DISMISS
OR, IN THE ALTERNATIVE, SEVER COUNT VI**

The Defendant, Harun Yener, moves this Court pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), to dismiss Count VI of the superseding indictment, charging him with possession of obscene material, in violation of 18 U.S.C. § 1466A(b).  In the alternative, Mr. Yener moves to sever Count VI pursuant to Federal Rules of Criminal Procedure 8 and 14. In support thereof, Mr. Yener states as follows:

**INTRODUCTION**

The Supreme Court has stated unequivocally that the First Amendment does not allow the criminalization of simple possession of obscene material in the home. *See Stanley v. Georgia*, 394 U.S. 557, 568 (1969) ("We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime.").  Yet that is precisely what the government has charged here.  The superseding indictment charges Mr. Yener with "knowingly possess[ing] a visual

depiction of any kind . . . that depicts a minor engaging in sexually explicit conduct and is obscene." [ECF No. 46] at 4. Because the Constitution does not permit such a prosecution, Count VI of the indictment must be dismissed.

Worth noting at the outset is that this case is not about child pornography. The indictment does not allege, and the discovery does not support, any charge that Mr. Yener possessed any material depicting an actual child. This case involves cartoon pornography—depictions of sexual acts that were generated either by hand drawing or by a computer. *See* Indictment [ECF No. 46] at 4 ("visual depiction of any kind, including a drawing and cartoon"). The governmental interest in regulating pornography that includes the depiction of *actual* minors is obviously heightened as compared to pornography-adjacent material that includes only the depiction of *cartoon* characters. *See Osborne v. Ohio*, 495 U.S. 103, 109–10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."). And this case involves only the latter.

It is unsurprising, given these principles, that no court has upheld the criminalization of the simple possession of obscene material, even if that material purports to represent a minor. Without the use of an actual minor, the governmental interest in regulating those materials falls away. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 258 (2002) (striking down Child Pornography Protection Act as overbroad and thus unconstitutional for criminalizing possession of virtual depictions of child pornography). Indeed, in the only case to address this application of 18 U.S.C. § 1466A head on, *United States v. Anderegg*, Case No. 24-CR-00050-JDP, [ECF

No. 73] (W.D. Wisc. Feb. 13, 2025), the Court struck down the provision at issue here as unconstitutional as applied to the simple possession of cartoon child pornography. So even accepting the indictment as true—accepting that the materials at issue *are* obscene and *do contain* depictions of children—Count VI of the indictment must be dismissed.

## THE FACTS

### I.       Factual and Procedural Background

In February 2024, and indeed at all relevant times, Mr. Yener was homeless, and living in the alleyway behind a hoagie shop in Coral Springs, Florida.  He slept near a dumpster in that alleyway, working at the hoagie shop whenever he was provided work.  Because Mr. Yener did not have a home at which to keep his belongings, he rented a small storage unit at "Coral Springs Mini Storage," a few blocks away from the alleyway in which he slept.

At some point in February 2024, an employee of the Mini Storage facility noticed that Mr. Yener had not placed a lock on his storage unit.  In violation of his company policy, the employee then entered the storage unit and began rummaging around, including by reading Mr. Yener's personal journal.  Because something he saw alarmed him, he called the police, who in turn contacted the FBI.

The FBI made contact with Mr. Yener on March 1, 2024, when they approached him outside a diner in Coral Springs, Florida.  During that meeting, the officers requested that Mr. Yener take them to and allow them to search his storage unit. Mr. Yener acquiesced and, together, they drove from the diner to the storage unit to search.  As detailed more fully in the pending motion to suppress, the FBI seized at

that time two cellphones from the storage unit and, after obtaining a warrant, searched those phones.  It was on those two cellphones that the cartoon pornography was found.

Despite no charges being filed on the basis of the phones in 2024, the Government filed on August 29, 2025, a superseding indictment against Mr. Yener charging him, as relevant here, with one count of possessing obscene material, in violation of 18 U.S.C. § 1466A(b).  *See* Superseding Indictment [ECF No. 46] at Count 6.  The possession of obscene material count charges Mr. Yener with possessing on March 3, 2024, "a visual depiction of any kind, including a drawing and cartoon, that depicts a minor engaging in sexually explicit conduct and is obscene, and depicts an image that is, and appears to be, of a minor engaging in sexual intercourse . . . and lacks serious literary, artistic, political, and scientific value" and which has traveled in interstate commerce.  *Id.* at Count 6.

## II.    Statutory Scheme

Title 18, Section 1466A(b) criminalizes:

Any person who, in a circumstance described in subsection (d), knowingly possesses a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that—

(1)
    (A) depicts a minor engaging in sexually explicit conduct; and

    (B) is obscene; or

(2)
    (A) depicts an image that is, or appears to be, of a minor engaging in graphic bestiality, sadistic or masochistic abuse, or sexual intercourse, including genital-genital,

4

oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; and

(B) lacks serious literary, artistic, political, or scientific value;

or attempts or conspires to do so, shall be subject to the penalties provided in section 2252A(b)(2), including the penalties provided for cases involving a prior conviction.

Two aspects of the statute are of particular importance. *First*, the statute requires a finding that the material at issue is both: (1) obscene; and (2) contains a virtual depiction of a child. For the purposes of the motion, both are assumed, but it is worth acknowledging that this statute was passed in direct response to the Supreme Court's holdings that simple possession of obscene material is permitted by the First Amendment and simple possession of virtual pornography is permitted by the First Amendment. This statute is Congress's attempt to make illegal the combination of two things that each, on their own, are permitted.

*Second*, the statute does not address the possession of actual child pornography, only virtual pornography. Other statutes, of course, deal with the possession of actual child pornography. But this statute prohibits "visual depiction[s] of any kind, including a drawing, cartoon, sculpture, or painting." Under the canon of *noscitur a sociis*, when "several nouns . . . are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 195 (2012); *see also Paroline v. United States*, 134 S. Ct. 1710, 1721 (2014) ("It is . . . a familiar canon of statutory construction that [catchall] clauses are to be read as bringing within a statute categories similar in type to those

5

specifically enumerated." (citation omitted)).  And here, the specifically enumerated items of "drawing, cartoon, sculpture, or painting" all clearly refer to non-actual images depicting child pornography.

## THE LAW

A defendant may move to dismiss a charge based on a "defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B). Under Rule 12(b), "an indictment may be dismissed when there is an infirmity of law in the prosecution." *United States v. deVegter*, 198 F.3d 1324, 1326 (11th Cir. 1999) (citation omitted). In reviewing such motions, courts must look to whether the "factual allegations in the indictment" are "sufficient to charge the offense as a matter of law." *Id*.

As a general matter and under the rule of lenity, penal statutes are to be strictly construed, with any ambiguities resolved in favor of the defendant.  *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) ("We have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogative of Congress, and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed") (cleaned up); *Wooden v. United States*, 595 U.S. 360, 388 (2022) (Gorsuch, J., concurring) (the "'rule of lenity' is a new name for an old idea—the notion that 'penal laws should be construed strictly'" (citation omitted)). Where the "act underlying the conviction" is "by itself innocuous," the Supreme Court has made clear that "restraint is particularly appropriate." *Arthur Andersen*, 544 U.S. at 703.

6

## ARGUMENT

The synthesis of the issues presented by this motion is not foreign to First Amendment jurisprudence.   Indeed, the First Amendment has always had a particularized interest in sex and obscenity.  Accordingly, before explaining why the application of this statute to Mr. Yener's conduct runs afoul of the Constitution, this motion will briefly summarize the history of First Amendment jurisprudence on the subject.  Then, this motion will explain why, as applied to Mr. Yener, the statute at issue here is unconstitutional, as well as why the statute is overbroad and void-for-vagueness.  Lastly, the motion will address the issue of severance.

### I.      The First Amendment and Obscenity

It is beyond dispute that the First Amendment prevents the government from criminalizing the private possession of obscene material.  *See Stanley v. Georgia*, 394 U.S. 557, 568 (1969) ("We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime.").   And this ban on criminalizing the *possession* of obscene material necessarily extends to the *receipt* of obscene material—because how else, short of producing it oneself, might one come to possess it?  *See id.* at 564 ("It is now well established that the Constitution protects the right to receive information and ideas. This freedom (of speech and press) necessarily protects the right to receive.") (cleaned up)).  Schemes regulating the distribution of such material, however, continue to be able to be made criminal.  *See id.* (citing *Roth v. United States*, 354 U.S. 476 (1957) (distribution of obscene material)); *see also Miller v. California*, 413 U.S. 15, 18 (1973) (distribution of obscene material).

7

Reaching this conclusion in *Stanley* required a careful balancing of the individual's right to be free from governmental intrusion, on the one hand, and the government's interest in regulating obscenity, on the other.  For the latter, the State of Georgia raised: (1) "the right to protect the individual's mind from the effects of obscenity"; (2) "that exposure to obscene materials may lead to deviant sexual behavior or crimes of sexual violence"; (3) "that exposure to obscene material would create a clear and present danger of antisocial conduct or would probably induce its recipients to such conduct"; and (4) "that prohibition of possession of obscene materials is a necessary incident to schemes prohibiting distribution." *See id.* at 565–67.  All were unavailing, the Court said, when held against the individual's First Amendment "right to read or observe what he pleases—the right to satisfy his intellectual and emotional needs in the privacy of his own home." *Id.* at 565.

Accordingly, the statute was struck down, and the Court stated unequivocally that, whether by state or federal law, the First Amendment "prohibit[s] making mere private possession of obscene material a crime." *Id.* at 568.

## II.    The First Amendment and the Child-Pornography Carveout

That careful balancing of interests, which resulted in the *Stanley* Court holding that simple possession of obscene material was not a constitutionally sound ground for a criminal prosecution, shifts to the government's favor when the production of that material requires the participation of actual children.  For two reasons, the Supreme Court has always allowed the criminalization of the possession of child pornography—regardless of its obscenity status. *See New York v. Ferber*, 458 U.S. 747, 759 (1982).  "First, as a permanent record of a child's abuse, the continued

circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being. Second, because the traffic in child pornography was an economic motive for its production, the State had an interest in closing the distribution network." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002) (citing *Ferber*, 458 U.S. at 759).

In *Ferber*, the Supreme Court upheld the ban on distribution, sale, and production of child pornography on these bases. 458 U.S. at 759. And in *Osborne v. Ohio*, 495 U.S. 103 (1990), the Court—for the first time in a post-*Stanley* world—upheld a ban on mere *possession* of child pornography on First Amendment grounds. The Court did so after careful consideration of how the State's heightened interest in protecting children is affected by the economic market for child pornography. "Given the importance of the State's interest in protecting the victims of child pornography," the Court said that the State was justified in "attempting to stamp out this vice at all levels in the distribution chain." *Id.* at 110. Pellucid in this ruling, however, was the Court's anchor: a concern for the "victims of child pornography." *Id.*

In 1996, Congress attempted to expand upon the definition of child pornography to include purely virtual images. *See* Child Pornography Prevention Act (the "CPPA"), 18 U.S.C. § 2251 *et seq.* The language Congress used bears a striking resemblance to that at issue here. *Compare* 18 U.S.C. § 2256(8)(A) ("any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture," that "is, or appears to be, of a minor engaging in sexually explicit conduct"); *with* 18 U.S.C. 1466A(b) ("visual depiction of any kind, including a

drawing, cartoon, sculpture, or painting, that . . . depicts a minor engaging in sexually explicit conduct; and [] is obscene").

The constitutionality of the CPPA was challenged in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), wherein petitioners argued that it made criminal the simple possession of obscene material that did not depict an *actual minor*.  The government argued that, despite banning admittedly virtual media, the "speech prohibited by the CPPA is virtually indistinguishable from child pornography, which may be banned without regard to whether it depicts works of value." *Id.* at 249.  But the Court made clear that the specific governmental interests that allow the criminalization of child pornography—the dual prongs identified in *Ferber, see supra*—are not present when dealing with purely virtual media.  *See Ashcroft*, 535 U.S. at 250 (noting that "the CPPA prohibits speech that records no crime and creates no victims by its production.  Virtual child pornography is not 'intrinsically related' to the sexual abuse of children").

Because the government seemingly acknowledged that the Court's precedent would lend no support to the CPPA, it advanced additional governmental interests, including: (1) that the "CPPA is necessary because pedophiles may use virtual child pornography to seduce children"; (2) that "virtual child pornography whets the appetites of pedophiles and encourages them to engage in illegal conduct"; and (3) that "its objective of eliminating the market for pornography produced using real children necessitates a prohibition on virtual images as well," because the virtual images might be "indistinguishable from real ones." *Id.* at 251, 253, 254.

10

The Court rejected each, and in so doing reaffirmed that the First Amendment does not allow the prosecution of simple possession of obscene material. *Id.* at 256 ("In sum, [the CPPA] covers materials beyond the categories recognized in *Ferber* and *Miller*, and the reasons the Government offers in support of limiting the freedom of speech have no justification in our precedents or in the law of the First Amendment.").

**III.   Section 1466A is Unconstitutional As Applied to Mr. Yener**

Because the government has charged Mr. Yener in Count VI with: (1) simple possession; of (2) obscene material; that (3) does not include in its production the use of any actual minor human being, Count VI must be dismissed on First Amendment grounds. The Supreme Court has made clear that the simple possession of obscene material can be criminalized only in one circumstance: if the material at issue depicts the sexual exploitation of an actual, minor human being. *See Osborne*, 495 U.S. at 111. Because the material here does not, the statute is unconstitutional as applied to Mr. Yener.

The Eleventh Circuit has not had occasion to consider an as-applied challenge to Section 1466A. Indeed, the only case that seems to address an as-applied challenge to the possession-charge of the statute is *United States v. Anderegg*, Case No. 3:24-CR-00050-JDP, [ECF No. 73] (W.D. Wis. Feb. 13, 2025) (attached as Ex. 1). There, the defendant was charged with not only possessing, but also producing and distributing virtual, AI-created, child pornography. *Id.* at 1. He moved to dismiss all four charges on First Amendment grounds. Consistent with the above discussion, the Court granted the motion to dismiss the possession count. In so doing, the Court rejected the government's contention that *Stanley* "doesn't apply to the possession

11

and production counts in this case because *Stanley* involved obscene material involving *adults*," with the Court correctly noting that it is the governmental interest at issue—"safeguarding the physical and psychological well-being of a minor"—that governs the different treatment actual child pornography receives in the law. *See id.* at 15 (citing *Osborne*, 495 U.S. at 10).

The same result should follow here. The pornography here was downloaded not from some secret dark-website, but from a Google Image search. It does not depict actual minors. Because Mr. Yener is charged only with possessing that pornography, the First Amendment bars this prosecution, and Count VI must be dismissed.

## IV. Section 1466A is Unconstitutional, Overbroad, and Vague

In addition, and though foreclosed by the Eleventh Circuit's decision in *United States v. Ostrander*, 114 F. 4th 1348 (11th Cir. 2024), Mr. Yener alleges that Section 1466A is facially unconstitutional as overbroad and is void-for-vagueness.

It is overbroad because "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010). On this point, consider that the statute criminalizes the possession of self-drawn doodles. It criminalizes not just distribution but also possession. It criminalizes drawings and images generated by one's own hand (or by an AI-generator) in the same way it criminalizes those purchased or found online. And, perhaps most importantly, it punishes *purely virtual* cartoons (e.g., a pornographic satire of a cartoon movie), the same as it punishes *semi-virtual* cartoons, where an actual human's features are simulated or superimposed on a

cartoon. Because each example includes obviously protected material, the statute is overbroad.

In addition, the statute is void-for-vagueness because the offenses contained within are not "define[d] with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). In *Ostrander*, the defendant challenged the obscenity prong of the statute on this ground. But the problem exists on both prongs. Given that the statute covers purely virtual images (e.g., cartoons, anime, AI-generated videos, drawings, and sculptures), that are made illegal only when they "depict[] a minor engaging in sexually explicit conduct," how is a person of ordinary intelligence to know when the character is a minor? Cartoons and anime are not realistic depictions of the human species. They do not have listed ages. Indeed, many of the images and videos at issue here are of obviously fantastical characters that do not (and indeed could not) exist on planet Earth. How is one to judge whether a particular cartoon character is a minor? Or a sculpture?

***

While Mr. Yener acknowledges that his facial challenge to the statute is foreclosed by *Ostrander*, it is worth noting that the decision does not affect the analysis in Section III, *supra*. In *Ostrander*, the defendant filed a pretrial motion to dismiss that was denied as "untimely." *Id.* at 1356. Accordingly, on appeal, he had not preserved the issue as to whether or not the statute was unconstitutional *as applied to him*. Because Federal Rule of Criminal Procedure 12 allows only

13

jurisdictional motions to be filed "at any time," Ostrander was left only to argue that the statute was *facially* unconstitutional. Accordingly, and importantly, Ostrander did not advance the primary argument presented here: that the statute is unconstitutional only when applied to the *simple possession* of obscene material.

Also worth noting is that *Ostrander* did not deal with the arguments presented here. The primary overbreadth and vagueness argument here is that, because the statute does not limit itself to depictions of actual human beings, and includes cartoons and anime, it is impossible to determine who is and who is not a "minor." *See* 18 U.S.C. § 2256(1) ("'minor' means any person under the age of eighteen years"). This is because cartoons do not exist on planet Earth—they do not depict real people, but ideas. They therefore have no "age" as that term is generally understood. This argument was not raised in *Ostrander*.

## V.    Count VI Should At the Least be Severed

If the Court does not dismiss Count VI outright, Mr. Yener requests that the Court sever Count VI from the upcoming trial. Federal Rule of Criminal Procedure 8(a) states that the "indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Federal Rule of Criminal Procedure 14(a) provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

14

First, Count VI is improperly joined with Counts I–V.  Counts I–V relate to terrorism-related offenses that occurred between March 1, 2024 and November 20, 2024.  Count VI, on the other hand, relates to cartoon pornography that was downloaded on Mr. Yener's phone prior to March 1, 2024.  And we know this because his phones were seized *before* any of the actions charged in Counts I–V.  Count VI is therefore neither "of the same or similar character" nor "based on the same act or transaction" as the other counts.

Second, even if not improperly joined, Count VI would impermissibly prejudice Mr. Yener's defense.  And the prejudice here is obvious.  Mr. Yener faces very serious terrorism-related offenses in Counts I–V.  His statutory maximum sentence for those offenses is life in prison.  His guidelines range for those offenses is also life in prison.  Count VI, which deals with the possession of obscene material, is completely and wholly unrelated to the conduct at issue in the other counts.  Indeed, it is difficult to imagine that, but for a single computer forensic analyst to testify regarding the download of the cellphones, that there will be any witness overlap between Counts I–V on the one hand, and Count VI, on the other.  Not only that, but Count VI relates to inherently inflammatory material—allegedly obscene cartoon pornography that is difficult for juries to digest.

At the very least, Count VI should be severed. Recall Justice Douglas's powerful admonition in *Miller*, that "[o]bscenity cases usually generate tremendous emotional outbursts.  They have no business being in the courts." *Miller v. California*, 413 U.S. 15, 41 (1973) (Douglas, J., dissenting).  The government should not be

15

permitted to smuggle a cartoon pornography trial in the middle of a terrorism trial.

It serves no purpose but to inflame the passions of the jury.

***

WHEREFORE, Mr. Yener respectfully requests that this Court dismiss Count

VI or, in the alternative, to sever Count VI from the upcoming trial.


Respectfully submitted,

HECTOR DOPICO
FEDERAL PUBLIC DEFENDER

By:   */s/ Victor Van Dyke*
     Victor Van Dyke
     Assistant Federal Public Defender
     Florida Special A No.: A5503021
     150 W. Flagler Street, Suite 1700
     Miami, Florida 33130-1555
     Tel: (305) 530-7000
     E-mail: victor_vandyke@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on December 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Victor Van Dyke*
Victor Van Dyke