**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cr-20523-BLOOM/Elfenbein**

UNITED STATES OF AMERICA,

     Plaintiff,

v.

HARUN ABDUL-HAMID YENER,

     Defendant.

_____/

## ORDER DENYING MOTION TO SUPPRESS

**THIS CAUSE** is before the Court upon Defendant's Motion to Suppress ("Motion"), ECF No. [62]. Defendant seeks to suppress "all statements made by him on March 1, 2024, and all physical evidence obtained after federal agents seized two cellphones found in his storage unit following a search on March 1, 2024." *Id*. The Government filed a Response in Opposition ("Response"), ECF No. [68], and Defendant filed a Reply in Support ("Reply"), ECF No. [72]. The Court also held an evidentiary hearing on the Motion on February 6, 2026, and February 9, 2026. The Court has carefully considered the Motion, the supporting and opposing filings, the record in this case, the applicable law, the testimony, other evidence admitted.  the parties' oral arguments and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

## I.   BACKGROUND

On August 27, 2025, the Defendant was charged by Superseding  Indictment with Attempted Use of a Weapon of Mass Destruction, in violation of 18 U.S.C. § 2332(a) (Count 1), Attempted Use of Explosive, in violation of 18 U.S.C. § 844(i) (Count 2); Threatening to Assault and Murder a Federal Law Enforcement Officer, in violation of 18 U.S.C. § 115(a)(l)(B) (Counts 3-5) and

Possession of Obscene Visual Representations of the Sexual Abuse of Children, in violation of 18 U.S.C. § 1466A(b) (Count 6). ECF No. [46] at 4.

The Defendant now seeks to suppress all statements he made on March 1, 2024, and all physical evidence obtained after federal agents seized two cellphones following a search of his storage unit. ECF No. [62] at 1. The Defendant argues he was questioned in violation of the Fifth Amendment, the search of his storage unit and seizure of his phones violated the Fourth Amendment, and the search warrant for his phones lacked probable cause. The Government responds that the Defendant was not in custody and therefore not entitled to *Miranda* warnings, the Defendant voluntarily consented to the search of his storage unit, the seizure of the Defendant's cell phones was constitutionally valid, and the search warrant established the requisite probable cause. ECF No. [68].

## II.    LEGAL STANDARD

"A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (citing *United States v. Smith*, 546 F.2d 1275 (5th Cir. 1977)). "In short, the motion must allege facts which, if proven, would provide a basis for relief. A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture...." Id. (citing *United States v. Harrelson*, 705 F.2d 733 (5th Cir. 1983)). While in certain well-defined situations the ultimate burden of persuasion may shift to the government upon an initial showing of certain facts by the defendant, "[i]t is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing." *United States v. Lincks*, No. 09–60187–CR, 2009 WL 3256745, at *3 (S.D. Fla. Oct. 7, 2009) (quoting *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977)). The evidentiary burden

at a suppression hearing is a preponderance of the evidence. See *United States v. Matlock*, 415 U.S. 164, 177 (1974).

Relevant to the case before this Court, when a Defendant alleges his statements were taken in violation of his *Miranda* rights, he bears the burden of proving he was in custody when he made those statements. *United States v. Sigouin*, 494 F. Supp. 3d 1252, 1261 (S.D. Fla. 2019) (citing United States v. de la Fuente, 548 F.2d 528, 533 (5th Cir. 1977)).

Moreover, "[u]pon a motion to suppress evidence gathered through a warrantless search and seizure, the burden of proof as to the reasonableness of the search rests with the prosecution. The Government must demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the [F]ourth [A]mendment." *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983) (citing *United States v. Impson*, 482 F.2d 197 (5th Cir.1973)).

## III.    DISCUSSION

### A.  Defendant was not Entitled to *Miranda* Warnings

Defendant argues he was "in custody" at the time he was questioned when surrounded by multiple officers, handcuffed, and prevented from leaving. ECF No. [62] at 5. Defendant further argues that his custodial interrogation required *Miranda* warnings. *Id*. While in custody, Defendant contends he invoked his right to silence, which did not deter officers from continuing their questioning. *Id*. Defendant avers that because his request to remain silent was not scrupulously honored, all statements made on March 1, 2026, must be suppressed. *Id* at 6.

The Government responds that the Defendant was not in custody, and therefore, not entitled to *Miranda* warnings. ECF No. [68] at 4. Specifically, the Government contends the totality of the circumstances surrounding law enforcement's interactions with the Defendant did not rise to the type of coercive environment requiring *Miranda* warnings. *Id*. The Government contends that the

Defendant was only temporarily detained until Coral Springs detectives could arrive on scene. *Id*. To that end, the Defendant was allowed to remain seated on a bench outside the diner and was not subject to "brandishing of firearms or threats, physical force or pressure, or placed in a locked squad car." *Id*. The Government further points out that when the Coral Springs detective arrived on scene, he immediately requested Defendant's handcuffs be removed before the detective's inquiry. The Government argues the body-worn camera footage shows that the Defendant spoke with the detective and other law enforcement officers in a calm manner and in a neutral setting both outside the diner and after the Defendant agreed to go to his storage unit. *Id*. at 7-8.

The Court finds the Defendant was not entitled to *Miranda* warnings. "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Cordera v. Sec'y, Fla. Dep't of Corr.*, 636 F. App'x 552, 555 (11th Cir. 2016) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). To determine whether a suspect is "in custody," courts look at the "circumstances surrounding the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). In consideration of those circumstances, the test is an objective one: "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). The "ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Cordera*, 636 F. App'x at 555 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). Thus, the Court turns to address the facts surrounding the Defendant's statements.

Admitted into evidence at the hearing was the e body-worn camera footage. The footage begins with the Defendant in handcuffs and seated on a bench outside of a diner. He is surrounded by four officers, and a fifth officer arrives on scene and walks over to the Defendant. ECF No. [88-3A] at 0:40-0:47. The fifth officer is informed by another detective that Detective Faiola, who is yet to

arrive on scene, needs to speak to the Defendant. ECF No. [68-3] at 1. He is also informed that the Defendant "doesn't wanna talk." *Id*. at 2. Approximately seven minutes later, after the arrival of Detective Chad Whittington, Officer Dagostinis asks Detective Whittington, "is he free to leave now?" *Id*. at 4. Detective Whittington replies, "[unintelligible] tell you in 30 seconds here [unintelligible] phone and we'll figure it out." *Id*. This exchange occurs in front of the Defendant. ECF No. [88-3A] at 8:22-8:27.

The Government contends that this encounter with the Defendant constitutes merely a "temporary detainment" akin to a traffic or *Terry* stop. The Court disagrees. At this point, placed in handcuffs and surrounded by multiple police officers, the Defendant was in custody. However, the record reflects that while Defendant was in handcuffs, he was not interrogated.[1] As such, the *Miranda* warnings were not required.

About one minute later, Detective Faiola arrived and the situation evolved. He requests the handcuffs be removed. ECF No. [68-3] at 5. From that point forward, the Defendant is no longer in handcuffs. As the Government points out, Detective Faiola tells the Defendant:

> Listen just so you know, you're not in trouble, okay? You can't get in trouble for things like that you say or whatever, uhm, but you have people concerned, that's all. That's why I took you out of the handcuffs, you're not under arrest okay, uhm, but I do want to speak to you about these writings, so just to kind of put your mind at ease.

*Id*. at 6. The Eleventh Circuit has held that "informing an individual that he is 'not under arrest' and that the proposed conversation is voluntary is also 'powerful evidence' that he is not in

---

[1] In *Rhode Isalnd v. Innis*, the Supreme Court held that "[w]e conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. 446 U.S. 291 at 301 (1980). Here the Defendant was not subject to express questioning or its functional equivalent while he was handcuffed.

custody." *United States v. Woodson*, 30 F.4th 1295, 1304 (11th Cir. 2022) (quoting *United States v. Acosta*, 363 F.3d 1141, 1150 (11th Cir. 2004)).

Moreover, the Court finds that throughout the body-warn camera footage, the officers spoke to the Defendant in a manner that was calm and non-confrontational.[2] *See United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010) (holding that in assessing the totality of the circumstances for an 'in custody' analysis, the Court should consider whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled, including the location and length of the detention). Furthermore, review of the body-warn camera footage shows that the officers never brandished their weapons or touched the Defendant beyond initially patting him down. *See United States v. Maldonado*, 562 F. App'x 859, 861 (11th Cir. 2014) (holding a postal inspector's failure to brandish a weapon as they approached the defendant weighed against custodial interrogation). Finally, the locations of the questioning (the diner and outside the Defendant's storage unit) were familiar or at least neutral. *See United States v. Brown*, 441 F.3d 1330, 1348 (11th Cir. 2006) ("Although the location of the interview is surely not dispositive in determining whether the interviewee was in custody, '[c]ourts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings,' such as the suspect's home.'"). As such, the Court finds the Defendant was not in custody once Detective Faiola arrived and released him from the handcuffs. Because the Court finds the Defendant was not entitled to *Miranda* warnings, the Court need not address whether the Defendant invoked his right to silence.

---

[2] As the Government points out, "law enforcement allowed [the Defendant] to smoke, inquired if he had eaten breakfast before traveling to the storage unit, called his employer so that his tardiness would be excused, and allowed him to move about without restraints as he and the officers traveled from the diner to the storage unit and back." ECF No. [68] at 8.

**B.  The Defendant Voluntarily Consented to the Search of His Storage Unit**

Defendant argues that any consent to search was manufactured and coerced by the Government. ECF No. [62] at 10. Specifically, Defendant argues:

> the fruits of the "private search" were put on display for [the Defendant], including specific writings allegedly found in his storage unit, and specific drawings he allegedly drew. The officers then proceeded to communicate to [the Defendant] that they knew his criminal history, including by quoting directly from past police reports. All the while, [the Defendant] was surrounded by at least four officers/agents outside of a diner. And before any purported consent to search was given, the officers threatened [the Defendant] with additional stops in the future if he did not acquiesce to the search to "squash" the issue then and there.

*Id*. The Government responds that the Defendant voluntarily and knowingly consented to the search of the storage unit, and the Defendant's only concern was that his shift at work was about to start. ECF No. [68] at 10. The Government points out that the Defendant provided written and oral consent to search the unit. *Id*. The Court agrees with the Government.

"Whether consent. . .was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *United States v. Robinson*, 690 F.2d 869, 874 (11th Cir. 1982) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Courts consider multiple factors when evaluating voluntariness, including: (1) the voluntariness of the defendant's custodial status, (2) the presence of coercive police procedure, (3) the extent and level of defendant's cooperation with police, (4) the defendant's awareness of the right to refuse consent, and (5) the defendant's education and intelligence. *Id*. The list of factors is non-exhaustive, but such factors are "indicia of coercion to be considered during weighing of totality of circumstances in determining whether consent was voluntary." *United States v. Blake*, 888 F.2d 795, 799 (11th Cir. 1989).

Here, the Defendant signed a voluntary consent form to allow the officers to search the storage unit. ECF No. [80-4]. The signing of the consent form is captured on body-warn camera footage.

ECF No. [88-3B] at 16:10-18:21. While the Defendant argues the officers improperly coerced his consent prior to signing the form by surrounding him, communicating his criminal history, and threatening future stops, the body-warn camera footage tells a different story. As the Court previously noted, once Detective Faiola removed the handcuffs from the Defendant, he was no longer in custody. The Defendant's primary concern with accompanying the officers to the storage unit was his prior work commitments. ECF No. [68-3] at 73. The tone throughout the interaction with officers was conversational, until after the search, when officers sought to take the Defendant's phones. At that point the Defendant became upset and stated:

> this is not a threat, I'm being, making a deadass statement. Y'all take my shit, there's no, there's no negotiating, there is no communicating, all, all that niceness is out the door because now you're taking away my livelihood.

*Id*. at 211. Moreover, the Defendant tells the officers "we're no longer cool man." *Id*. at 218. Such statements give the Court insight into the Defendant's state of mind throughout the prior interactions. "Consent is about what the suspect knows and does, not what the police intend. 'Coercion is determined from the perspective of the suspect.'" *United States v. Spivey*, 861 F.3d 1207, 1215 (11th Cir. 2017) (quoting *Illinois v. Perkins*, 496 U.S. 292, 296, 1990). Here, the Defendant's statements imply a willingness to cooperate and a cordial relationship with the officers, which ended only after the officers indicated they would take his phones, but existed during the consent to search the storage unit. Moreover, it is only after the officers take the phones that the Defendant requests to be given his things so he can leave, evidencing an awareness that he could have ceased cooperation at any time. ECF No. [68-3] at 225. The totality of the circumstances support that the Defendant voluntarily consented to the search of his storage unit.

### C. The Seizure of the Defendant's Phones Did Not Violate the Fourth Amendment

Defendant argues the seizure of his phones violates the Fourth Amendment. Specifically, he contends that the criminality of the phones was not immediately apparent. ECF No. [62] at 12. In

support, the Defendant points out that despite being questioned for hours on March 1, 2026, he was not arrested. *Id*. Moreover, he was arrested over six months later for actions that post-dated the seizure of the phones. *Id*. As such, the Defendant argues probable cause did not exist to believe there was evidence of a crime on the phones. *Id*.

The Government responds that seizure of the phones was constitutionally valid. ECF No. [68] at 12. Specifically, the Government argues the Fourth Amendment allows for warrantless seizures of property when law enforcement can show 1) probable cause to believe that the property in question contains contraband or evidence of a crime; and 2) an applicable warrant exception, such as exigent circumstances, apply. *Id*. (citing *United States v. Babcock*, 924 F.3d 1180, 1186 (11th Cir. 2019). The Government contends that the Defendant's statements concerning his communications with foreign terrorist organizations ("FTOs") and their efforts to recruit him, coupled with writings and drawings found in the storage unit, informed law enforcement's decision to seize the phones and prevent the Defendant from wiping or otherwise removing the illicit communications. *Id*. at 13.

During the search of the storage unit, law enforcement and the Defendant discussed his contacts with FTOs. FBI Agent Sutherland then states, "Okay and they, are we all grouping them from one group, multiple groups like ISIS, Al Qaeda, Hamas, Hezbollah—" ECF No. [68-3] at 168. The Defendant responds, "I've, I've had contact with at least three all together in my whole life. . . Hezbollah, ISIS and Al Nusrah Front." *Id*. Agent Sutherland seeks clarification, "So when you say that you have people in your phone right now that you're talking to, what, what are they talking, who are they with?" *Id*. The Defendant replies, "Oh every fucking body. Everybody's working with everybody—Everybody's doing shit together, the fuck. Cartels are talking to terrorists, they're both talking to each other trying to negotiate." *Id*. Agent Sutherland seeks

9

specifics, "But these people specifically talking to you, who do they identify as?" *Id*. The Defendant answers, "They, they, they're not gonna say who they are you just gotta wa-listen to how they talk and how they move to understand who they are." *Id*. The Defendant then explains that he heard from one of these contacts as recently as January. *Id*. at 169. The Defendant acknowledges he was in a "panel"[3] with an individual claiming to associated with ISIS. The Defendant suspected he was Al Nusrah Front. *Id*. at 173. Law enforcement also reviewed his writings and drawings "regarding war and inflicting harm." ECF Nos. [68] at 14, [68-2].

Given those facts, the Court turns to whether the officers had probable cause to seize the phones. Probable cause to seize property is the belief that evidence will "*probably* be found in a particular location." *United States v. Babcock*, 924 F.3d 1180, 1192 (11th Cir. 2019) (citing *United States v. Noriega*, 676 F.3d 1252, 1261 (11th Cir. 2012). Probable cause does not require conclusive evidence and "is not a high bar." *Washington v. Howard*, 25 F.4th 891, 899 (11th Cir. 2022) (quoting *D.C. v. Wesby*, 583 U.S. 48, 57 (2018)). Probable cause requires only a "substantial chance" that evidence of criminal activity exists. *Babcock*, 924 F.3d at 1192 (citing Illinois *v. Gates*, 462 U.S. 213, 243 (1983)). A "'substantial chance' exists 'where the facts within the collective knowledge of law enforcement officials' suffice 'to cause a person of reasonable caution to believe that a criminal offense has been or is being committed' and... evidence of that offense will be found in a particular place." *Id*. (quoting *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018)). Here, the officers had probable cause to believe the property contained evidence of a crime. The Defendant discussed with the officers his contacts with various FTOs and indicated he had contact with one as recently as January. Moreover, the officers had already viewed Defendant's writings and drawings from the storage unit that depicted images regarding war and inflicting

---

[3] The Defendant confirmed after being asked by Agent Sutherland that a "panel" was like a group chat. ECF No. [68-3] at 170.

harm. ECF No. [68-3]. Agent Sutherland asked the Defendant about a line he wrote, "be prepared brothers". ECF No. [68-3] at 113. The Defendant responded, "Ah, that, uhm, this is when, this is when they last hit me up and this is the t-this is what I was talking when I said they last hit me up and I was supposed to contact them, but they vanished." *Id*. The Defendant indicated he wrote that after being contacted by someone from Al Nusrah Front just three months prior. *Id*. Law enforcement officers also found a bat with writings such as "take their life", "fight or die", "kill", and "no mercy". *Id*. at 111. The writings combined with the Defendant's statements about his FTO contacts formed the basis for probable cause and for the officers to believe the phone contained evidence of a crime, such as messages related to the Defendant planning attacks against the United States.

To satisfy the exigent circumstances exception to the warrant requirement, the Court must also determine whether independent probable cause has been established to believe that evidence will be removed or destroyed before a warrant can be obtained. *Babcock*, 924 F.3d 1180 at 1194 (citing *United States v. Young*, 909 F.2d 442, 446 (11th Cir. 1990). The Eleventh Circuit has explained that, in drug cases and cases concerning electronic files, the exception of exigent circumstances is particularly compelling because contraband, records, and electronic files can be easily and quickly destroyed. *See Babcock*, 924 F.3d at 1194. However, a cell phone itself does not create an exigent circumstance. *Id*. (citing *Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018)). Law enforcement must have a reason to believe a suspect would delete the electronic files in question. Here, the Defendant became combative after he was told his phones would be taken. ECF No. [68] at 14. And it was reasonable for the officers to conclude that the Defendant had the ability and incentive to destroy information contained on the phone after an FBI agent and other members of law enforcement expressed concern about his writings and contacts. *See Babcock*, 924 F.3d at

11

1194 (holding that it was reasonable for officers to conclude defendant would destroy information after learning of the investigation of his relationship with a minor). Though the Defendant argues the criminality on the phone was not immediately apparent under the plain view exception to the warrant requirement, that standard is not relevant, whereas here, the Government asserts that exigent circumstances, not plain view, satisfied the exception. Defendant further argues that because no arrest took place, that probable cause cannot exist. Defendant cites no case law to support such a claim. As such, the Court finds exigent circumstances existed to seize the phones without a warrant.

## D.  The Search Warrant For the Phones Contained Probable Cause

Finally, Defendant argues that the search warrant obtained after the two cell phones were seized lacked probable cause. ECF No. [62] at 13. Specifically, the Defendant points out that the Application for Warrant states that warrant was related to a violation of 18 U.S.C. § 2339B(a)(1), which makes it a federal crime to provide material support or resources to FTOs. *Id*. Defendant contends that nowhere in the warrant application does the affiant swear out any facts related to the Defendant providing support to an FTO, only that he communicated "with members sympathetic to or affiliated" with FTOs. *Id*. at 14.

The Government responds that in support of its request to search the cell phones, the Affidavit sets forth a summary of facts that supported the finding of probable cause including:

> [S]tatements that [the defendant] made regarding his interactions with members of FTOs and their efforts to recruit him into committing terroristic attacks within the United States and overseas; his admission regarding his experience mixing chemicals to create volatile, explosive reactions; how he would assist the FTO if they asked him to mix chemicals due to his expertise in working with explosives; the handwritten letters found within his storage unit that contained messages such as "preparing for combat", "a successful war", "action is key to defeating our enemies and their allies", "day for battle is coming this Spring", "be prepared brothers", and "self sacrifice"; how FTO members asked him about whether United States had positioned warships in particular places that could strike adversarial positions in Iraq and Yener's confirmation that he provided such information; how

12

> the FTOs asked him to travel overseas to join their efforts and encouraged him to commit acts within the United States; and Yener's admission that he was waiting for an opportunity to facilitate an attack within the United States

ECF No. [68] at 16-17.

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999). "[T]he [warrant] affidavit must contain sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (internal quotation marks and citation omitted). "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994). Moreover, as the Supreme Court held, [r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969).

Turning to the Affidavit, the facts support the Magistrate Judge's finding of probable cause. Specifically, the Affidavit explains that the Defendant reported being in contact with multiple FTOs, ECF No. [68-5] ¶ 7, he communicated with those FTOs utilizing multiple cell phones, *Id.*, he reported these FTOs would seek to recruit him and offered him assistance to travel overseas,

13

*Id.* ¶ 8,  the FTOs encouraged him to carry out plots and attacks on their behalf in the United States, *Id.* ¶ 9, he was waiting for his opportunity to act within the United States, *Id.* ¶ 10, the writings within the storage unit referenced "vague plans for 'brothers' and 'his people' to come together and 'prepare'", *Id.* ¶ 11, drawings found within the storage unit depicted various rifles, handguns, and explosive devices, *Id.*, interviewing agents found multiple drawings of explosive devices, some of which contained technical details about how the device operates and its intended purpose, *Id.* ¶ 12, and the Defendant told law enforcement that he "made his choice" and the next time he was contacted by an FTO he "would help them with this or that." *Id.* ¶ 13.

The facts are more than sufficient to support the Magistrate Judge's finding of probable cause that evidence of violations of 18 U.S.C. § 2339B.     .

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Suppress, **ECF No. [62]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 20, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:

counsel of record