**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cr-20523-BLOOM/Elfenbein**

UNITED STATES OF AMERICA,

     Plaintiff,

v.

HARUN ABDUL-HAMID YENER,

     Defendant.

_____/

**OMNIBUS ORDER ON MOTION TO EXCLUDE TESTIMONY AND MOTION TO**
**ALLOW TESTIMONY VIA ZOOM**

**THIS CAUSE** is before the Court upon The Government's *Daubert* Motion to Exclude Testimony of John Kiriakou, ECF No. [138], and Defendant's Motion to Allow Testimony Via Zoom, ECF No. [133]. The Court has reviewed the Motions, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, the Government's Motion, ECF No. [138], is denied, and Defendant's Motion, ECF No. [133], is granted.

## I.  BACKGROUND

On August 27, 2025, Defendant was charged by Superseding Indictment with Attempted Use of a Weapon of Mass Destruction, in violation of 18 U.S.C. § 2332(a) (Count 1), Attempted Use of Explosive, in violation of 18 U.S.C. § 844(i) (Count 2); Threatening to Assault and Murder a Federal Law Enforcement Officer, in violation of 18 U.S.C. § 115(a)(l)(B) (Counts 3-5) and Possession of Obscene Visual Representations of the Sexual Abuse of Children, in violation of 18 U.S.C. § 1466A(b) (Count 6). ECF No. [46] at 4. Count 6 has been severed, and the trial will proceed next week on Counts 1-5.

At trial, Defendant intends to call John Kiriakou ("Kiriakou") a former C.I.A. Intelligence Officer, as an expert witness on the structure of undercover operations and the development of human sources. ECF No. [133] at 2. Defendant requests Kiriakou be allowed to testify via Zoom or an alternative live, two-way video conferencing system during trial. *Id*. at 5. The Government filed a *Daubert* Motion to exclude the testimony of Kiriakou, arguing Kiriakou is not qualified, his methodology is unreliable, his testimony is unhelpful, and Defendant's disclosure is untimely. *Id*. at 6. The Court first addresses whether Kiriakou's testimony will be excluded. *See generally* ECF No. [138]

## II.   LEGAL STANDARD

### A.  Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702 of the Federal Rules of Evidence, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.

2004). While some overlap exists among these requirements, the court must individually analyze each concept. See id.

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc. v. Hurel Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (internal quotation marks and citations omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (internal quotation marks and citations omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293, n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

### III.   DISCUSSION

#### A.  The Government's Motion to Exclude the Testimony of John Kiriakou

##### i.   Qualifications

The Government argues Kiriakou is not qualified to testify about the FBI's undercover operations or its development of human sources because Kiriakou worked as an intelligence officer for the CIA rather than the FBI. ECF No. [138] at 7. Moreover, the Government contends that any knowledge Kiriakou has about undercover operations is outdated because he left the CIA in 2004. The Government further argues Kiriakou should is not qualified to testify because pursuant to an 11(c)(1)(C) plea agreement, Kiriakou admitted to willfully disclosing the identity of a covert CIA officer to a journalist, made multiple false statements, and a district judge sentenced him to thirty months in prison.

Defendant responds that Kiriakou is qualified because, despite not having experience with the FBI, he has extensive history running undercover operation for the CIA, similar to the operations present in this case.. ECF No. [143] at 8. Defendant argues the government is free to cross-examine Kiriakou on differences it believes exist between counterterrorism operations overseas and counterterrorism operations conducted stateside, but such differences are not a basis for exclusion.

"The qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is *minimally* qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Banuchi v. City of Homestead*, 606 F. Supp. 3d 1262, 1272 (S.D. Fla. 2022) (citing *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009)) (quoting *Kilpatrick v. Breg, Inc.*, Case No. 08-10052-CIV, 2009 WL 2058384 (S.D. Fla. June 25, 2009)). Here, as Defendant points out, Kiriakou oversaw undercover intelligence operations and recruited and developed human sources. ECF No. [133-1]. Kiriakou's

*curriculum vitae* also reflects that he directed counterterrorism operations in a large South Asian station, leading to the largest capture of terrorist suspects in CIA history. *Id*. Though the Government argues that Kiriakou is not qualified because his experience is from a different organization and occurred years ago, "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001)). Kiriakou has substantial experience in undercover and counterterrorism operations, as well as experience in the recruitment and development of human sources. Thus, Kiriakou is qualified to testify as to how undercover operations are designed in the counterterrorism space, including how undercover agents are utilized and human targets are recruited and developed. While the Government contends Kiriakou's prior conviction renders him unqualified, it cites no case law or statutory authority to support its contention. The Government's arguments are not a basis to reject Kiriakou's qualifications, but appropriate subjects for cross-examination. The Court finds Kiriakou is qualified to testify in this case.

### ii. Methodology

The Government argues Kiriakou's *curriculum vitae* is severely lacking regarding his methodology for testifying on the proposed matters. ECF No. [138] at 10. Specifically, the Government argues nothing in his *curriculum vitae* expounds on any alleged knowledge regarding the structure of the FBI's undercover operations or handling of confidential human sources.

Defendant responds that Kiriakou reviewed the evidence in this case and formed an opinion on methods used by the undercover agents and informant, based on Kiriakou's experience running undercover operations. ECF No. [143] at 12. Defendant contends experts called to testify about police practices are some of the most common experts in federal courts, and there is nothing unusual about Mr. Kiriakou's opinions or how he arrived at them.

Here, it is evident that Kiriakou is relying on his experience to establish reliability. "If the [expert] witness is relying solely or primarily on experience," to establish reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (citation and internal quotation marks omitted). Defendant has indicated Kiriakou has examined the evidence in this case, including written reports, transcripts, and audio/video evidence. Kiriakou will render an opinion, based on his training and experience, that the undercover agents utilized tactics that have as their purpose gaining the compliance of a target and inducing the target to act a certain way. ECF No. [147-4]. Courts routinely allow experts on law enforcement practices to rely on their law enforcement experience, knowledge, and training to evaluate the facts of a case to form their opinions. *See Washington v. City of Waldo, Fla.*, 2016 WL 3545909, at *3 (N.D. Fla. Mar. 1, 2016). In rendering his opinions, Kiriakou purports to rely on his fourteen years of experience as a CIA intelligence officer in which he directed counterterrorism operations. Such a methodology is sufficiently reliable. To the extent Kiriakou's experience with the CIA is outdated or distinct from the work of the FBI, the Government can address such issues through cross-examination.

### iii. Helpfulness

The Government argues Kiriakou's testimony will not be helpful because it will not assist the trier of fact in ascertaining whether Defendant committed the charged offense. ECF No. [138] at 11. Specifically, the Government contends the structure of the FBI's undercover operation, and the handling of confidential human sources, is wholly irrelevant in this matter. The Government further argues that Federal Rule of Evidence 704 bars an expert witness from stating whether or not a defendant had a mental state or condition that constitutes an element of the crime. *See United States v. Newman*, 849 F.2d 156, 165 (5th Cir. 1988) ("The expert may not offer an opinion on the

ultimate issues of whether the defendant was in fact induced to commit the crime or lacked predisposition.")

Defendant responds that Kiriakou's testimony is helpful to the jury because it is relevant to Defendant's entrapment defense. ECF No. [143] at 12. Defendant argues Rule 704 is not implicated by Kiriakou's testimony because he will not be conducting an examination of the Defendant or testifying to his mental state or condition. Defendant represents that Kiriakou's testimony will be for the limited purpose of analyzing the tactics used by the undercover agents and confidential human source in this case. Defendant further argues such evidence is relevant to Defendant's entrapment defense because per the Eleventh Circuit Pattern Jury Instructions, "[E]ntrapment occurs when law-enforcement officers or others under their direction persuade a defendant to commit a crime the defendant had no previous intent to commit."

Helpfulness turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014). Here, the Court finds the tactics utilized by law enforcement in undercover operations is beyond the average understanding of a lay person. Moreover, the Court rejects the Government's argument that the proposed testimony is not relevant. Defendant has represented Kiriakou's testimony will be limited to the tactics used by the undercover agents, and to the extent they are designed to induce behavior in a subject, those tactics are relevant to Defendant's entrapment defense. The proposed testimony does not implicate Defendant's mental state or reaches the ultimate issue of whether Defendant was persuaded to commit a crime he had no previous intent to commit. Therefore, Rule 704 is not implicated.

### iv. Exclusion Under Rule 403

The Government argues Kiriakou's testimony should be excluded under Federal Rule of Evidence Rule 403. ECF No. [138] at 12. The Government argues Kiriakou has a strong bias

against the intelligence community, and his testimony is irrelevant. The Government contends that "[t]o bestow upon him the designation of expert will give him far more credibility than his outdated experience or criminal acts warrant."

Defendant responds that Kiriakou's testimony is relevant to Defendant's entrapment defense, and Defendant has a constitutional right to present that testimony in support of his defense. ECF No. [143] at 16. Defendant also argues that Kiriakou's perceived bias against the intelligence community is not a basis for exclusion, but a subject for cross-examination.

The Court agrees with Defendant. As noted above, Kiriakou's testimony is relevant to the entrapment defense. The Government has not articulated a risk of undue prejudice that outweighs the probative value of the proposed testimony.

### v. Untimely Disclosure

The Government contends that the disclosure of Kiriakou is deficient and fails to meet the criteria set forth in Rule 16 which should result in the exclusion of the witness. ECF No. [138] at 7. As Defendant points out, after the filing of the Government's Motion, this Court ordered defense counsel to provide an expert disclosure for Mr. Kiriakou by June 10, 2026, at 12:00 p.m. to address the Government's concerns. Defendant complied with the Court's Order. *See* ECF No. [147]. The Court finds no issue with Defendant's timeliness. Having found Kiriakou qualified, his methodology sufficiently reliable, and his proposed testimony helpful to the trier of fact, the Government's Motion, ECF No. [138], is denied.

### B. Defendant's Motion to Allow Testimony Via Zoom

Defendant seeks to allow Kiriakou to testify via Zoom because Kiriakou is unavailable to travel to Miami during the currently scheduled trial period. ECF No. [133] at 2. Defendant indicates Kiriakou will have access to a hardwired ethernet internet connection to ensure that his testimony streams properly.

8

Case No. 24-cr-20523-BLOOM/Elfenbein

Though the Government initially filed a Response in Opposition, ECF No. [139], the Government represented at Calendar Call that, assuming the technology works, there would be no impediment to its cross examination. As such, Defendant's Motion, ECF No. [133], is granted. Defendant shall make all arrangements for the Zoom link and ensure the witness is available to testify so as not to unreasonably delay the trial.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  The Government's Motion, ECF No. **[138]**, is **DENIED**.

2.  Defendant's Motion, ECF No. **[133]**, is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 11, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:

counsel of record

9