UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20523-BLOOM/ELFENBEIN

UNITED STATES OF AMERICA,

Plaintiff,

v.

HARUN ABDUL-HAMID YENER,

Defendant.

_________________________________/

**YENER'S MOTION TO DISMISS THE § 1466A(B)(2) THEORY OF COUNT VI, OR, IN THE ALTERNATIVE, TO LIMIT COUNT VI TO THE § 1466A(B)(1) THEORY AND STRIKE THE (B)(2) ALLEGATIONS AS SURPLUSAGE, FOR AN ELECTION OF THEORIES, AND FOR A BILL OF PARTICULARS**

Harun Abdul-Hamid Yener, through undersigned counsel, respectfully moves this Court, pursuant to Federal Rules of Criminal Procedure 7(c), 7(d), 7(f), 12(b)(3)(B)(i,iii,v), and the First, Fifth, and Sixth Amendments to the United States Constitution, to dismiss Count VI of the Superseding Indictment [ECF 46] to the extent the charge rests on 18 U.S.C. § 1466A(b)(2); or, in the alternative, to strike the § 1466A(b)(2) allegations as surplusage and limit Count VI to the § 1466A(b)(1) theory; to compel the government to elect a single statutory theory and the single visual depiction on which it will proceed, and to furnish a bill of particulars identifying each visual depiction on which the prosecution intends to rely, by file

name and hash value, the statutory theory it asserts as to each, and which depictions were presented to the grand jury.[1] In support, Mr. Yener states as follows.

## INTRODUCTION

Count VI is a single paragraph that charges Mr. Yener with knowingly possessing "a visual depiction"—one depiction, in the singular—without identifying that depiction in any way. In the same paragraph, the grand jury recited, in the conjunctive, the elements of two different statutory theories: the obscenity theory of 18 U.S.C. § 1466A(b)(1), which requires proof of all three prongs of *Miller v. California*, 413 U.S. 15 (1973), and the "lacks serious value" theory of 18 U.S.C. § 1466A(b)(2), which does not. Additionally, Count VI's citation clause invokes "Sections 1466A(b) and 2522A(b)(2)"—and 18 U.S.C. § 2522A does not exist.

Five arguments follow. Parts I and II show that the § 1466A(b)(2) theory cannot be tried on this indictment—Part I because Count VI omits an element the grand jury was never asked to find, and Part II because (b)(2) cannot be applied to drawings depicting no real child without the finding of obscenity the First Amendment requires. Parts III through V seek alternative relief should the (b)(2) theory survive: Part III asks the Court to limit Count VI to the § 1466A(b)(1) theory and to strike the (b)(2) allegations as surplusage; Part IV shows that Count VI is duplicitous—legally, because (b)(1) and (b)(2) are separate offenses, and factually, because the government intends to prove some thirty separate acts of possession

[1] On August 27, 2026, Mr. Yener filed a motion to exceed the 20-page limit established by Southern District of Florida Local Rule 7.1(c)(2); that motion is pending. If the Court should deny that request, Mr. Yener will re-file the instant motion in an abbreviated form.

under a count charging one—and asks the Court to compel an election of subsection and of depiction; and Part V asks, in the further alternative, for a bill of particulars identifying the depictions at issue, because their identity controls what the government must prove Mr. Yener knew about each. Parts II and IV are alternatives and are not in tension: (b)(1) and (b)(2) do not share elements, which is why they may not be tried in a single count.

*First*, the (b)(2) theory fails to state an offense. Section 1466A(b)(2)(A) reaches a depiction of a minor engaging in graphic bestiality, sadistic or masochistic abuse, or sexual intercourse. "Graphic" is a defined term and an element of the offense. *See, e.g., United States v. Handley*, 564 F. Supp. 2d 996, 999 (S.D. Iowa 2008) (indictment alleging "graphic" nature of material in § 1466A prosecution over drawn material). Count VI omits this element. Because scienter attaches to the character and content of the depiction, the omission also relieves the government of proving that Mr. Yener knew the depiction was graphic. An element the grand jury never charged cannot be supplied by the government's brief, or by a jury instruction. A bill of particulars can clarify a charge the grand jury made; it cannot supply one the grand jury never made. The particulars sought in Part V are directed to a different defect. *Russell v. United States*, 369 U.S. 749 (1962); *Stirone v. United States*, 361 U.S. 212 (1960).

*Second*, and independent of any pleading defect, § 1466A(b)(2) is unconstitutional as applied to the wholly fictional drawings at issue here. Where no actual minor is depicted, the material is protected expression unless obscene. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240 (2002). Obscenity requires all three *Miller*

prongs. Section 1466A(b)(2) requires only the third. Therefore, as applied to this material, § 1466A(b)(2) permits conviction for possessing protected expression. The reasoning of *Handley* invalidated this very subsection in a prosecution over drawn material, though it did so on the overbreadth ground Mr. Yener does not press here. He does not renew the facial challenge this Court has already rejected [ECF 74]. He relies instead on the premise *Handley* establishes and Part II develops: that (b)(1) and (b)(2) reach substantially the same material, that only (b)(1) requires the factfinder to find the material obscene, and that prurient appeal and patent offensiveness are questions of fact Congress may not resolve by legislative definition.

*Third*, even setting aside the (b)(2) theory, Count VI does not tell Mr. Yener what he must defend against. The indictment identifies no visual depiction and selects no theory of prosecution. Counsel understands the government to contend that approximately thirty separate images support the count. Because the criminality of each drawing turns on an image-specific constitutional adjudication, the identity of the depiction is not evidentiary detail—the visual depiction is the offense. And because Count VI charges a single depiction while the government intends to prove approximately thirty, under either of two theories, neither Mr. Yener nor this Court can tell which act or which theory the grand jury found. Parts IV and V address the two consequences of that failure: a count that cannot yield a unanimous verdict, and a defense that cannot be prepared image by image.

**BACKGROUND**

The Superseding Indictment [ECF 46], returned August 27, 2025, charges six counts. Counts I through V allege attempted use of a weapon of mass destruction,

attempted use of an explosive, and three threats to federal officers. Count VI, severed from the remaining counts and set for separate trial, charges possession of obscene visual representations of the sexual abuse of children under 18 U.S.C. § 1466A(b).

Count VI alleges in full that on or about March 3, 2024, in Broward County, Mr. Yener:

> did knowingly possess a visual depiction of any kind, including a drawing and cartoon, that depicts a minor engaging in sexually explicit conduct and is obscene, and depicts an image that is, and appears to be, of a minor engaging in sexual intercourse, including genital-genital, oral-genital, anal-genital, and oral-anal, whether between persons of the same or opposite sex, and lacks serious literary, artistic, political, and scientific value, and such depiction had been shipped and transported in interstate and foreign commerce, including by computer, and was produced using material that had been shipped and transported in interstate or foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Sections 1466A(b) and 2522A(b)(2).

[ECF 46 at 4].

The count identifies no image, no file, no title, no source, and no device—only "a" single visual depiction. The material at issue consists of drawings and cartoons; no actual minor is depicted. As noted above, counsel understands the government to contend that approximately thirty images support the count.

Furthermore, counsel understands that the government presented only three depictions—through an agent's description—to the grand jury that returned the Superseding Indictment. The government has not identified which three of the approximately thirty depictions it intends to prove at trial were the three the grand jury considered.

Mr. Yener previously moved to dismiss Count VI [ECF 63]. The Court denied that motion in relevant part [ECF 74], rejecting an as-applied challenge under *Stanley v. Georgia*, 394 U.S. 557 (1969), and treating overbreadth and vagueness challenges as foreclosed by *United States v. Ostrander*, 114 F.4th 1348 (11th Cir. 2024). The arguments presented here were not raised in that motion.

## LEGAL STANDARD

An indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To satisfy the Fifth and Sixth Amendments an indictment must (1) set forth every essential element of the offense, (2) give the defendant notice sufficient to prepare a defense, and (3) enable him to plead double jeopardy in a later prosecution. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *Russell*, 369 U.S. at 763-64. A count that fails to allege an essential element must be dismissed. Fed. R. Crim. P. 12(b)(3)(B)(v); *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003).

Tracking the statutory language is sufficient only when the statutory words themselves "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence." *Hamling*, 418 U.S. at 117 (citation omitted). Where they do not, more is required. If the indictment simply tracks the language of the statute, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Russell*, 369 U.S. at 765.

And where the charging language omits an element altogether, the defect goes to the grand jury's role rather than to the sufficiency of notice: because the Fifth

Amendment guarantees that a defendant will be tried only on charges a grand jury actually found, neither the prosecutor nor the court may supply the missing allegation. *Stirone*, 361 U.S. at 215-19; *Russell*, 369 U.S. at 770.

## ARGUMENT

### I. THE SECTION 1466A(B)(2) THEORY MUST BE DISMISSED BECAUSE COUNT VI OMITS THE ELEMENT THAT THE DEPICTED CONDUCT BE "GRAPHIC."

### A. "GRAPHIC" IS AN ELEMENT OF § 1466A(B)(2)(A).

Section 1466A(b)(2) applies to a visual depiction that "depicts an image that is, or appears to be, of a minor engaging in graphic bestiality, sadistic or masochistic abuse, or sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex," and that "lacks serious literary, artistic, political, or scientific value." § 1466A(b)(2)(A)-(B).

Congress defined the term. "[G]raphic," when used with respect to a depiction of sexually explicit conduct, "means that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted." 18 U.S.C. § 1466A(f)(3). A defined statutory term that narrows the reach of a criminal prohibition is an element the grand jury must charge, and the petit jury must find. *United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015) ("An indictment must set forth the essential elements of the offense."). Count VI omits this element. The count alleges a depiction of "a minor engaging in sexual intercourse, including genital-genital, oral-genital, anal-genital, and oral-anal." The word "graphic" appears nowhere in the Superseding Indictment.

The contrast with the charging language federal prosecutors have actually used is instructive. The superseding indictment in *Handley*—a leading prosecution under § 1466A for drawn material—described the images as depicting "a minor engaging in *graphic* bestiality, sadistic or masochistic abuse, or sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal." 564 F. Supp. 2d at 999. Count VI drops the limiting term and drops two of the three enumerated categories, retaining only an unmodified reference to sexual intercourse. The government cannot dismiss as surplusage a word its own charging practice treats as essential.

### B. "GRAPHIC" MODIFIES THE ENTIRE SERIES, INCLUDING "SEXUAL INTERCOURSE."

The government may contend that "graphic" modifies only "bestiality." It does not. Under the series-qualifier canon, a modifier at the start (or end) of an integrated list of parallel terms ordinarily applies to the entire list. Congress's own usage in this statutory scheme confirms the reading. The definition of "sexually explicit conduct" incorporated into § 1466A by § 1466A(f)(2) pairs the modifier directly with intercourse: "graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex." 18 U.S.C. § 2256(2)(B)(i); *see Handley*, 564 F. Supp. 2d at 1000-01 (setting out the definition). That provision is cited as evidence of Congress's drafting usage, not as a definition incorporated into § 1466A(b)(2); as explained in subpart C, (b)(2) borrows nothing from § 2256(2). The canon also tracks ordinary usage. *See Facebook, Inc. v. Duguid*, 592 U.S. 395, 402-03 (2021) ("Under conventional rules of grammar, '[w]hen there is

a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series.'") (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012)).

The Supreme Court has applied that reasoning to a materially identical drafting problem. In *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), the government urged the most natural grammatical reading of 18 U.S.C. § 2252, under which "knowingly" reached only the surrounding verbs and not the character-and-content elements set off in separate subclauses. *Id.* at 68. The Court refused. It declined to attribute to Congress a reading that produced anomalous results, *id.* at 68-69, and it held that as a matter of grammar it is difficult to conclude that the modifier governs one element in the parallel subclauses but not the other, *id.* at 78. The government asks this Court to do here what *X-Citement Video* refused to do there: read a limiting term as governing the first item in an integrated series and abandoning the rest.

The three listed items—bestiality, sadistic or masochistic abuse, and sexual intercourse—are parallel categories of sexually explicit conduct sharing a single article and a single verb. Nothing in the structure suggests Congress meant to qualify the first and leave the remaining two at large.

The reading is confirmed by consequence. Section 1466A(b)(2) dispenses with the prurient-interest and patent-offensiveness requirements of *Miller*. If "graphic" does not cabin "sexual intercourse," then (b)(2) would criminalize any drawing that depicts what appears to be a minor engaged in intercourse in any manner

whatsoever—however stylized, abstract, or non-explicit the rendering—provided a factfinder deems the image to lack serious value. Statutes are construed where fairly possible to avoid such constitutional difficulty. *See X-Citement Video*, 513 U.S. at 78. The narrowing term is the only thing standing between (b)(2) and a general prohibition on disfavored fiction.

### C. *OSTRANDER*'S CONSTRUCTION OF § 1466A(F) DOES NOT GOVERN § 1466A(B)(2).

The government's most likely answer to this argument is *Ostrander*, and the answer does not work. Ostrander argued that his images fell outside § 1466A because 18 U.S.C. § 2256(2)(B) requires that depicted intercourse be "graphic." The Eleventh Circuit rejected the argument, but on a ground unique to the subsection he was charged under. Ostrander was convicted under § 1466A(b)(1), which reaches a depiction of "a minor engaging in *sexually explicit conduct*"—and § 1466A(f) provides that "sexually explicit conduct" "has the meaning given the term in section 2256(2)(A) *or* 2256(2)(B)." Because that definition is disjunctive, the panel held, the government was free to rely on § 2256(2)(A)(i), which contains no graphic requirement. *Ostrander*, 114 F.4th at 1368-69.

That reasoning has no application to § 1466A(b)(2), for the reason the panel supplied. Ostrander's error, the court explained, was "beginning his analysis" with a chapter-wide definition rather than "with the specific statute Ostrander was charged with violating." *Id.* at 1369. Beginning where the panel directed, § 1466A(b)(2) does not contain the phrase "sexually explicit conduct" anywhere. It borrows no definition from § 2256(2). It sets out its own list of prohibited conduct, and Congress placed the

word "graphic" in that list directly. Section 1466A(f)'s disjunctive formulation resolves which imported definition supplies content for a term the statute *imports*; it does no work where the statute imports nothing. The government cannot invoke § 2256(2)(A) to read out of (b)(2) a word Congress wrote into it.

Two further points confirm the distinction. First, *Ostrander* accepts the premise on which the preceding subpart rests. It described § 2256(2)(B) as "requir[ing] that sexual intercourse be 'graphic' in order to count as sexually explicit conduct," and it recited the § 1466A(f)(3) definition in the same terms set out above. *Id.* at 1368. The panel's disagreement with Ostrander was about which definition applied—not about what "graphic" means, and not about whether it limits "sexual intercourse." Second, the panel reviewed the claim only for plain error, because Ostrander raised it for the first time on appeal. *Id.*

### D. ALLEGING THE CATEGORY OF ACT DOES NOT PLEAD THE ELEMENT.

The government may respond that the count's specifications— "genital-genital, oral-genital, anal-genital, and oral-anal"—functionally allege graphicness because such acts necessarily involve the genitals. The argument misreads § 1466A(f)(3). The definition does not ask what act is depicted; instead, this subsection asks what *a viewer can observe* in the depiction. A drawing may depict intercourse through framing, position, or implication without any part of the genitals or pubic area being observable. The statutory specifications describe the *conduct*; "graphic" describes the *depiction*. They are different inquiries, and only one of them is pleaded in the indictment.

That distinction is not academic on our facts. The material at issue consists of stylized drawings. Whether any given drawing renders observable genitalia during the depicted act is precisely the kind of question the grand jury was required to consider, and the Superseding Indictment does not show it considered.

### E. The omission cannot be cured by argument, particulars, or instruction.

A bill of particulars cannot save a count that omits an element. Particulars clarify what a valid charge means, they do not add allegations the grand jury never made. *Russell*, 369 U.S. at 770. Nor may the Court instruct the jury on an element the indictment does not contain. To do so would permit conviction on a charge the grand jury did not return—the constructive amendment condemned in *Stirone*. 361 U.S. at 217-19. If the government wishes to proceed under § 1466A(b)(2), it must return to the grand jury—and confront the constitutional problem addressed in Part II below.

### F. The omission also relieves the government of proving that Mr. Yener knew the depiction was graphic.

The missing element has a second consequence. Section 1466A(b) punishes one who "knowingly possesses" a visual depiction bearing the character and content the subsection describes, and the adverb is not confined to the verb it precedes. In *X-Citement Video*, the Supreme Court held that the presumption favoring a scienter requirement applies to each statutory element that separates otherwise innocent conduct from wrongful conduct, and it read the same "knowingly … if—" construction to reach the character-and-content clauses that follow. 513 U.S. at 72-73, 78.

The Eleventh Circuit has applied that rule to this statute. Setting out the elements of § 1466A(b)(1), *Ostrander* held that the government must prove that the defendant "knew the visual depiction depicted a minor engaging in sexually explicit conduct," and the panel sustained the verdict only after tracing the evidence from which the jury could infer that knowledge. 114 F.4th at 1366-67. The charging language the panel construed is the charging language of § 1466A(b)(2).

Scienter does not extend to everything. Mr. Yener does not contend that the government must prove he knew the depiction was legally obscene, or that he judged it to lack serious value; those are legal characterizations of the material, not facts about what it portrays. *Hamling*, 418 U.S. at 120; *see X-Citement Video*, 513 U.S. at 72 n.3. Knowledge does attach, however, to what the depiction portrays. Under § 1466A(b)(2) that includes the graphic character of the conduct depicted—whether a viewer can observe any part of the genitals or pubic area while the conduct is being depicted. § 1466A(f)(3).

This disposes of the government's likely answer that "graphic" is surplusage. The word is not decorative. It fixes both what the government must prove about the depiction and what it must prove Mr. Yener knew about it. By pleading the (b)(2) theory without it, the Superseding Indictment subtracts an element and the scienter that accompanies it, on a theory the grand jury was never asked to find. For the reasons given in subpart E, neither omission can be supplied by the prosecutor.

## II. SECTION 1466A(B)(2) IS UNCONSTITUTIONAL AS APPLIED TO WHOLLY FICTIONAL DRAWINGS.

Where a depiction involves no actual minor, the government's interest in protecting children from the harms of production is not implicated, and the material may be proscribed only if it is obscene. *Free Speech Coalition*, 535 U.S. at 240, 256. Obscenity, in turn, is defined by all three *Miller* prongs: prurient appeal under contemporary community standards, patent offensiveness, and the absence of serious literary, artistic, political, or scientific value. *Miller*, 413 U.S. at 24; *see Pope v. Illinois*, 481 U.S. 497, 500-01 (1987) (third prong measured by a reasonable-person standard, not community standards).

Section 1466A(b)(2) requires only the third prong. Under this prong, a person may be convicted for possessing a drawing that a factfinder deems to lack serious value, without any finding that the drawing appeals to the prurient interest or is patently offensive under community standards. Applied to material depicting no real child, that is a prohibition on protected speech. Pornography may be proscribed only if it is obscene or was made using actual minors, and material satisfying neither condition remains within the First Amendment's protection. *Free Speech Coalition*, 535 U.S. at 240.

The government's answer to that problem has been that (b)(2) describes a category of material Congress deemed obscene *per se*, so that the first two *Miller* prongs need not be found. The *Handley* court rejected that position, observing that (b)(1) and (b)(2) reach the same "narrow class" of sexual content, yet only (b)(1) requires the factfinder to find the material obscene—and that prurient appeal and

patent offensiveness are questions of fact for the jury that Congress may not resolve by legislative definition. 564 F. Supp. 2d at 1004-07.

In *Handley*, the government conceded that its *per se* obscenity theory originated in Department of Justice briefs and had no judicial support. *Id.* at 1005 n.4. Count VI demonstrates the redundancy. The charge pleads the elements of both subsections in a single paragraph describing a single depiction, which is possible only because the two subsections reach nearly the same conduct. The *Handley* court identified three differences: (b)(1) incorporates the *Miller* test as an element and (b)(2) does not; (b)(2) adds the "appears to be" language as to "a minor"; and (b)(1) reaches a broader list of sexually explicit conduct. *Id.* at 1007. Ultimately, the court invalidated §§ 1466A(a)(2) and (b)(2) as to drawn material and confined the government to the obscenity prongs. *Handley*, 564 F. Supp. 2d at 1004-07, 1009.

*Handley* reached that result under the overbreadth doctrine, and Mr. Yener does not renew at this time the facial challenge this Court has already rejected. [ECF 74.] The point is narrower and does not depend on the reach of the statute in other applications. Whatever § 1466A(b)(2) may permissibly cover elsewhere, it cannot constitutionally be applied to this material—drawings depicting no actual child—without a finding of obscenity, because such material is protected expression unless obscene. *Handley* is consistent with that reasoning and confirms the premise on which our argument rests: that (b)(1) and (b)(2) reach substantially the same material, that only (b)(1) requires the factfinder to find the depiction obscene, and that prurient appeal and patent offensiveness are questions of fact Congress may not

resolve by legislative definition. 564 F. Supp. 2d at 1004-07. Mr. Yener asks here that § 1466A(b)(2) not be applied to drawings depicting no real child without the obscenity finding the First Amendment requires.

Nothing in *Ostrander* forecloses this argument because the panel only addressed § 1466A(b)(1). *Ostrander*, 114 F.4th at 1355. The distinction matters because the constitutional infirmity of (b)(2) lies precisely because there is no obscenity requirement. A decision sustaining the obscenity prong says nothing about the non-obscenity prong.

Indeed, *Ostrander*'s reasoning affirmatively supports Mr. Yener. The panel rejected the overbreadth challenge before it on the express ground that overbreadth "only applies if the statute reaches a substantial amount of constitutionally protected conduct," and that § 1466A(b) posed no such problem because it "only covers images that are *obscene* and, by definition, are not constitutionally protected." *Ostrander*, 114 F.4th at 1364. The panel distinguished *Free Speech Coalition* on precisely that basis: the statute there "prohibited visual depictions that were not, by definition, obscene," whereas "[h]ere, the statute only covers obscenity, so there is no such concern." *Id.* That premise is true of § 1466A(b)(1). It is false of § 1466A(b)(2), which requires no finding of obscenity at all. The government may not claim the benefit of a holding whose stated rationale its own charging theory contradicts. And the panel was explicit that the statute's text does reach protected expression: "Ostrander is correct that the text of the statute proscribes some conduct that may be constitutionally protected." *Id.* at 1359-60.

## III. IN THE ALTERNATIVE, COUNT VI MUST BE LIMITED TO THE § 1466A(B)(1) THEORY.

Count VI pleads both theories conjunctively and cites neither. The indictment references § 1466A(b) generally and "§ 2522A(b)(2)"—a provision that does not exist in Title 18. Counsel assumes the intended reference is 18 U.S.C. § 2252A(b)(2), the penalty provision cross-referenced by § 1466A(b). Mr. Yener does not seek dismissal on the basis of the miscitation. *See* Fed. R. Crim. P. 7(c)(2). But read correctly, the count cites no charging prong at all. Neither Mr. Yener nor this Court can determine from the face of Count VI which offense the grand jury found.

The practical consequences are serious. The two theories have materially different elements and require materially different defenses. A *Miller* defense under (b)(1) is directed to community standards and prurient appeal; a (b)(2) defense is directed solely to serious value, judged by a reasonable-person standard. *Pope*, 481 U.S. at 500-01. Counsel cannot prepare both without knowing which is charged, and a jury permitted to convict on either, without agreement on which, returns a verdict that reflects no shared finding of guilt. *Cf. Richardson v. United States*, 526 U.S. 813, 817-20 (1999).

If the (b)(2) theory is invalid—as argued above—a general verdict on Count VI cannot stand, because we could not determine whether the jury convicted on the valid theory or the invalid one. *Stromberg v. California*, 283 U.S. 359, 367-68 (1931); *Yates v. United States*, 354 U.S. 298, 311-12 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978); *cf. Griffin v. United States*, 502 U.S. 46, 52-56 (1991)

(distinguishing legally invalid theories from factually unsupported ones). Resolving the theory now avoids trying this count twice.

The relief Mr. Yener seeks is not novel. In *Handley*, the indictment there likewise charged §§ 1466A(a) and (b) without specifying a prong. Having invalidated (a)(2) and (b)(2), the court held that the indictment need not be dismissed entirely because the conduct alleged stated sufficient facts to charge the valid subsections. Accordingly, the court confined the prosecution, ordering that the government "can only proceed on counts that charge violations of subsections 1466A(a)(1) and (b)(1)." 564 F. Supp. 2d at 1007.

Mr. Yener asks this Court to do the same. No court appears to have passed on a particularity or election challenge to a dual-prong § 1466A count. *Handley* addressed the question only in deciding whether the invalidity of (a)(2) and (b)(2) required dismissal of charges that the defense had not challenged. The case's disposition nonetheless supplies the remedy. Once the (b)(2) theory is set aside, the count proceeds, if at all, under (b)(1) alone.

Mr. Yener therefore asks, in the alternative, that the Court enter an order limiting Count VI to the theory set forth in § 1466A(b)(1), striking the (b)(2) allegations as surplusage. *See* Fed. R. Crim. P. 7(d).

## IV. COUNT VI IS BOTH LEGALLY AND FACTUALLY DUPLICITOUS; THE COURT SHOULD ORDER THE GOVERNMENT TO ELECT.

"A count in an indictment is duplicitous if it charges two or more separate and distinct offenses." *United States v. Seher*, 562 F.3d 1344, 1360 (11th Cir. 2009) (citation modified). To determine whether a count is duplicitous, courts "look to the

text of the underlying statute" and consider "what conduct constitutes a single offense." *Id.* "[I]t is well settled that the test for determining whether several offenses are involved is whether identical evidence will support each of them, and if any dissimilar facts must be proved, there is more than one offense." *United States v. Bins*, 331 F.2d 390, 393 (5th Cir. 1964) (citing *Blockburger v. United States*, 284 U.S. 299 (1932)).

The risk of a duplicitous count is that "(1) [a] jury may convict a defendant without unanimously agreeing on the same offense; (2) [a] defendant may be prejudiced in a subsequent double jeopardy defense; and (3) [a] court may have difficulty determining the admissibility of evidence." *United States v. Deason*, 965 F.3d 1252, 1267 (11th Cir. 2020).

Duplicity implicates other constitutional concerns such as the denial of the defendant's Sixth Amendment right to knowledge of the charges against him. *United States v. Aguilar*, 756 F.2d 1418, 1420 n.2 (9th Cir. 1985). Under a duplicitous indictment or count, the jury will consider two crimes, creating the risk that the jury might convict without reaching a unanimous agreement on either crime. We would not know whether a unanimous verdict was reached because a general jury verdict on a single count "does not reveal whether the jury found the defendant guilty of one crime and not guilty of the others, or guilty of all of them." *Bins*, 331 F.2d at 392.

Another vice concerns the defendant's Fifth Amendment protection against double jeopardy. "[A] general verdict for a defendant on the [duplicitous] count does not reveal whether the jury found [the defendant] not guilty of one crime or not guilty

of both." *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975). That uncertainty could prejudice the defendant's exercise of the right not to be exposed to double jeopardy. *Id.* This is due to "a lack of clarity concerning the offense for which he is charged or convicted." *United States v. Aguilar*, 756 F.2d 1418, 1420 n.2 (9th Cir. 1985).

A count can be duplicitous in two ways: (1) legally duplicitous, by charging multiple separate statutory violations in one count, or (2) factually duplicitous, by charging multiple separate criminal acts in one count. The prohibition against both forms of duplicity is rooted in the Sixth Amendment's guarantee of notice and a unanimous jury verdict, as well as the Fifth Amendment's protection against Double Jeopardy. *United States v. Haddock*, 956 F.2d 1534, 1546 (10th Cir. 1992).

### A. Count VI is Legally Duplicitous Because 18 U.S.C. § 1466A(b)(1) and (b)(2) Are Separate and Distinct Offenses

Under the foundational test established in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), two statutory provisions constitute separate offenses if each requires proof of an element or a fact that the other does not. Subsections (b)(1) and (b)(2) of 18 U.S.C. § 1466A, both charged in Count VI, are separate and distinct crimes because their legal elements are fundamentally different.

1. Unique Elements of (b)(1): To convict under § 1466A(b)(1), the prosecution must prove to a jury that the material is legally obscene under the full three-prong test established in *Miller v. California*, 413 U.S. 15 (1973), including that the work appeals to the prurient interest under contemporary community standards. Subsection (b)(2) contains no such community obscenity requirement.

2. Unique Elements of (b)(2): To convict under § 1466A(b)(2), the prosecution must prove that the material specifically portrays graphic bestiality, sadistic or masochistic abuse, or sexual intercourse. A depiction that is merely a

"lascivious exhibition of the genitals" satisfies (b)(1) but fails to meet the strict conduct definitions required by (b)(2). *See Handley*, 564 F. Supp. 2d at 1007 (subsections (a)(1) and (b)(1) "encompass a broader list of sexually explicit conduct"); 18 U.S.C. § 2256(2)(A), (B). Furthermore, (b)(2) utilizes a completely distinct statutory shortcut regarding the *Miller* test, requiring only proof that the work lacks serious value.

Because each subsection requires proof of an element the other does not—obscenity for (b)(1), and the narrower enumerated conduct for (b)(2)—they are distinct offenses. Charging both in a single count is legal duplicity error.

**B. Count VI is Factually Duplicitous Because Each Individual Image Constitutes a Separate "Unit of Prosecution"**

In addition to blending two statutes, upon information and belief, Count VI aggregates approximately thirty separate factual acts—the various images the prosecution plans to take to the jury to prove Mr. Yener's guilt. To evaluate factual duplicity, a court must look to the statutory "unit of prosecution"—the precise act that Congress intended to punish. *Sanabria v. United States*, 437 U.S. 54, 69-70 (1978). Because both (b)(1) and (b)(2) criminalize knowingly possessing *a* visual depiction, aggregating them into Count VI creates a textbook factually duplicitous count.

**C. The Double Duplicity in Count VI Invades the Defendant's Constitutional Right to a Unanimous Jury Verdict**

The primary vice of a duplicitous count is that it creates an acute risk of a non-unanimous jury verdict, violating the Sixth Amendment. *United States v. Duncan*, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988). The *double* duplicity in this Indictment multiplies that risk exponentially.

If Count VI proceeds to trial in its current form:

- Jurors 1 through 4 might find that Image #1 is legally obscene, supporting a conviction strictly under (b)(1).
- Jurors 5 through 8 might find that Image #1 is lawful, but that Image #2 depicts sadomasochistic abuse, supporting a conviction strictly under (b)(2).
- Jurors 9 through 12 might reject Images #1 and #2 entirely, but find that Image #3 is illegal under one of the two provisions.

If the jury returns a general verdict of "guilty" on Count VI, Mr. Yener will be convicted of a federal felony despite the fact that the jury never unanimously agreed on which specific image or which specific statutory offense constituted the crime. The Supreme Court has made clear that a federal jury must agree unanimously on the specific criminal act committed. *Richardson v. United States*, 526 U.S. 813, 817 (1999).

**D. The Indictment Fails to Protect Against Double Jeopardy and Causes Prejudicial Confusion**

Furthermore, the government's charging strategy completely obscures the record for future Double Jeopardy claims. If Mr. Yener is acquitted or convicted on Count VI, a future court will be entirely unable to discern from a general verdict sheet which of the approximately thirty images, and which statutory theory, the jury actually decided. *United States v. Savoires*, 430 F.3d 376, 380 (6th Cir. 2005).

Additionally, forcing Mr. Yener to defend against approximately thirty distinct images and two separate laws simultaneously causes severe evidentiary prejudice. A jury, exposed to the sheer volume of approximately thirty sexualized images, may vote to convict out of cumulative disgust, even if no single image independently satisfies the rigorous, distinct legal definitions of either (b)(1) or (b)(2).

**E. The Appropriate Remedy is to Compel Election**

The Court must correct this error. While dismissal of an indictment is an available remedy, federal courts frequently cure pre-trial duplicity by compelling the prosecution to "elect" its case. *United States v. Robinson*, 651 F.2d 1158, 1161 (6th Cir. 1981); *see also United States v. Buchmeier*, 255 F.3d 415, 425 (7th Cir. 2001).

Accordingly, this Court should order the government to make a dual election: (1) select exactly one statutory subsection (b)(1) *or* (b)(2) upon which it will proceed, and (2) select exactly one single digital image from its list of approximately thirty to serve as the exclusive basis for that charge.

### V. IN THE ALTERNATIVE, THE COURT SHOULD ORDER A BILL OF PARTICULARS IDENTIFYING THE DEPICTION OR DEPICTIONS AT ISSUE.

Count VI charges possession of "a visual depiction." Period. The prosecutor has represented to the defense that he will try to prove possession of approximately thirty images. The prosecutor has not informed the defense of which legal theory he will press as to each image. The prosecutor declined to produce copies to the undersigned, requiring counsel to review the material only at an FBI facility.

In an ordinary child-pornography prosecution, courts often tolerate a count that does not identify particular files, reasoning that any qualifying image is contraband and that discovery cures any notice gap. This practice is inapplicable here. Because no actual minor is depicted, no image here is contraband unless a factfinder first determines, image by image, that it satisfies *Miller* (or, under the government's alternative theory, that it lacks serious value). *See Jenkins v. Georgia*, 418 U.S. 153, 160-61 (1974) (obscenity determinations are subject to independent constitutional review of the material itself). The identity of the depiction is therefore

not evidentiary detail; it is the thing the grand jury had to find, and the petit jury must find.

The comparison with *Handley* is again instructive. The indictment there described the charged material as "one or more drawings or cartoons," 564 F. Supp. 2d at 999—plural on its face, and thus at least disclosing that multiple images were at issue. Count VI charges "a visual depiction," in the singular, while the government intends to prove approximately thirty. Whatever latitude an indictment may have in describing contraband generically, Count VI does not merely fail to identify the depiction; it affirmatively represents that there is one.

That creates two concrete risks. First, constructive amendment. If the government proves thirty images when the grand jury charged one, there is no assurance the petit jury will convict on material the grand jury considered. *Stirone*, 361 U.S. at 217-19. Second, a patchwork verdict may ensue. Jurors could divide over which drawing is unprotected, with no twelve agreeing on any single image under any single theory yet return a general verdict of guilty. *Cf. Richardson*, 526 U.S. at 817-20.

The concern is not hypothetical, and it is not a matter of the quantum of proof before the grand jury. Counsel understands that the case agent described three depictions to the grand jury; the transcripts provided to defense counsel do not indicate whether the grand jury was shown those—or any—images. An indictment charges only what the grand jury found, and a trial may not enlarge it. *Stirone*, 361 U.S. at 217-19. If the government proves depictions the grand jury never considered,

Mr. Yener stands convicted on material no grand jury passed upon—the constructive amendment *Stirone* forbids. Because Count VI names no depiction, neither Mr. Yener nor this Court can presently determine where the boundary of the charge lies. Identifying the depictions presented to the grand jury is the only way to fix it.

The three numbers in this record do not reconcile. The Superseding Indictment charges *a* visual depiction, in the singular. The grand jury heard descriptions of three. The government represents that it will prove approximately thirty. Whatever the correct number, the indictment does not disclose it, and the government has not supplied it.

A third risk is distinctive to drawn material, and the Eleventh Circuit has flagged it without resolving it. *Miller* directs the factfinder to "the work, *taken as a whole*." 413 U.S. at 24. In *Ostrander*, the defendant argued that nine of the ten exhibits shown to the jury were panels extracted from longer illustrated sequences. The panel framed the question— "are separate, individually named (and individually copiable or movable) image files that nevertheless appear together in the same computer folder and appear to be related considered to be separate works? Or are they scenes that must be considered as part of a work 'as a whole' that the factfinder must consider in their full context?"—collected the authority bearing on it, *Kois v. Wisconsin*, 408 U.S. 229, 231-32 (1972); *Free Speech Coalition*, 535 U.S. at 248; *Deason*, 965 F.3d at 1262-63, and then declined to decide it: "But we need not resolve this issue today." *Ostrander*, 114 F.4th at 1367-68. The panel could avoid the question for one reason only—Ostrander conceded that one exhibit was "a single, stand-alone

image that has no broader context," and that exhibit alone sustained the verdict. *Id.* at 1368.

There is no such concession here, and there cannot be one, because the government has not identified a single depiction. If any charged drawing is a panel drawn from a longer narrative work—a chapter, a numbered sequence, a set carrying title pages, dialogue, or text—then the unit of analysis is the work and not the file, and the government's proof fails as to that depiction. *Deason*, 965 F.3d at 1262-63. Mr. Yener cannot make that showing, and this Court cannot evaluate it, without knowing which depictions are charged and whether each is freestanding or excerpted. The identity of the depiction is therefore not merely a matter of notice; it determines what the factfinder is required to look at.

Knowledge supplies a further and independent reason. The government must prove that Mr. Yener knew what each charged depiction portrayed. *Ostrander*, 114 F.4th at 1366. That proof is necessarily image-specific. *Ostrander* sustained the finding of knowledge by tracing particular images to particular folders, search terms, internet addresses, and devices. *Id.* at 1366-67. Mr. Yener cannot meet that proof, and no jury can unanimously find it, without knowing which depictions the government contends he knowingly possessed and what evidence of knowledge it offers as to each. A charge that names no depiction makes it impossible to prepare on an element the Eleventh Circuit has held the government must prove.

A bill of particulars is the appropriate remedy for the notice component of this problem. Fed. R. Crim. P. 7(f). Mr. Yener requests an order directing the government

to specify (a) each visual depiction on which it intends to rely, identified by file name and hash value; (b) as to each, the statutory theory on which it proceeds; and (c) which of those depictions were presented to the grand jury that returned the Superseding Indictment.

Finally, Mr. Yener expressly reserves, and does not by this motion waive, every objection that cannot ripen until trial. Those include any objection to the admission of a depiction not presented to the grand jury; any objection to a jury instruction permitting conviction on a depiction or a theory the grand jury did not charge; any motion for judgment of acquittal under Rule 29; and any claim of constructive amendment or prejudicial variance.

## CONCLUSION

For the foregoing reasons, Mr. Yener respectfully requests, in descending order of preference, that the Court: (1) dismiss Count VI to the extent it rests on 18 U.S.C. § 1466A(b)(2), with prejudice as to any § 1466A(b)(2) theory if the Court grants Part II, and in all events without prejudice to the § 1466A(b)(1) theory; (2) in the alternative, enter an order limiting Count VI to the § 1466A(b)(1) theory and striking the (b)(2) allegations as surplusage, *see* Fed. R. Crim. P. 7(d); (3) in the further alternative, order the government to elect, before trial and as to Count VI, (a) a single statutory subsection—§ 1466A(b)(1) or § 1466A(b)(2)—and (b) the single visual depiction on which it will proceed under that subsection; (4) in the further alternative, should the Court decline to compel an election, instruct the jury that it may convict on Count VI only if all twelve jurors agree on the same visual depiction and the same statutory subsection; and (5) in the further alternative, order a bill of particulars

under Fed. R. Crim. P. 7(f) directing the government to specify (a) each visual depiction on which it intends to rely, identified by file name and hash value, (b) the statutory theory it asserts as to each, and (c) which of those depictions were presented to the grand jury that returned the Superseding Indictment.

Respectfully Submitted,

**HECTOR A. DOPICO**
**FEDERAL PUBLIC DEFENDER**

By: */s/ Michael Caruso*__________
Michael Caruso
Assistant Federal Public Defender
Florida Bar No. 051993
150 W. Flagler Street, Suite 1700
Miami, Florida 33130
Tel: (305) 536-7000
Email: Michael_Caruso@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on **September 2, 2026**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/ Michael Caruso*
Michael Caruso